**IN THE UNITED STATES DISTRCT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | |
|---|---|
| GENE HIVELY, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| | Case No. 1:19-CV-609 |
| vs. | |
| | COMPLAINT - CLASS ACTION |
| LABORATORY CORPORATION OF AMERICA HOLDINGS d/b/a LABCORP and LABORATORY CORPORATION OF AMERICA d/b/a LABCORP, | JURY TRIAL DEMANDED |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff Gene Hively, on behalf of himself and all others similarly situated, by and through his undersigned attorneys of record, brings the following Class Action Complaint against Defendant Laboratory Corporation of America Holdings d/b/a LabCorp and Defendant Laboratory Corporation of America d/b/a LabCorp (collectively, "LabCorp" or "Defendants"), and states to the Court as follows:

1.       This is a data breach class action on behalf of 7.7 million patients whose sensitive personal information was accessed by computer hackers in a cyber-attack (the "Data Breach"). Information compromised in the Data Breach includes Social Security numbers, financial information (*e.g.*, credit card numbers and bank account information), medical information, other protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and additional personal information (collectively, "Sensitive Information").

2.       Plaintiff brings this class action lawsuit on behalf of a Nationwide class to address Defendants' inadequate safeguarding of class members' Sensitive Information.

1

3.     Armed with the Sensitive Information accessed in the Data Breach, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in class members' names, taking out loans in class members' names, using class members' names to obtain medical services, using class members' health information to target other phishing and hacking intrusions based on their individual health needs, using class members' information to obtain government benefits, filing fraudulent tax returns using class members' information, obtaining driver's licenses in class members' names but with another person's photograph, and giving false information to police during an arrest.

4.     As a result of the Data Breach, Plaintiff and class members have been exposed to a heightened and imminent risk of fraud and identity theft.  Plaintiff and class members must now and in the future closely monitor their financial accounts to guard against identity theft.

5.     Plaintiff and class members may also incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

6.     No one can know what else the cyber criminals will do with Plaintiff and class members' Sensitive Information. However, what is known is that the purpose of the hacking scheme was to obtain Sensitive Information. Plaintiff and class members are now, and for the rest of their lives will be, at a heightened risk of further identity theft and fraud. For all class members, fear and anxiety of identity theft or fraud is the new norm.

7.     Plaintiff seeks to remedy these harms on behalf of himself and all similarly-situated individuals whose Sensitive Information was accessed during the Data Breach.

8.     Plaintiff seeks remedies including but not limited to compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to

Defendant's data security systems, future annual audits, and free credit monitoring services funded by Defendant.

## PARTIES

9.      Plaintiff Gene Hively is an individual residing in Tennessee. He has been a patient of LabCorp when LabCorp collected and received Plaintiff's Sensitive Information in Indiana and Tennessee which LabCorp maintained in its database.  His Sensitive Information, on information and belief, was compromised in the data breach.

10.     Defendant Laboratory Corporation of America Holdings d/b/a LabCorp is incorporated in Delaware. Its principal place of business is in Burlington, North Carolina.

11.     Defendant Laboratory Corporation of America d/b/a LabCorp is incorporated in Delaware. Its principal place of business is in Burlington, North Carolina.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds $5 million exclusive of interest and costs, and many members of the class are citizens of states different from Defendants.

13.     This Court has personal jurisdiction over Defendants because Defendants conduct business in and throughout North Carolina, and because Plaintiff's and class members' claims arise out of LabCorp's contacts with North Carolina.

14.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), (c), and (d). LabCorp is registered to do business, transacted business, was founded in, and had agents in this district; a substantial part of the events giving rise to the Plaintiff's claims arose in this district, and a substantial portion of the affected interstate commerce described below has been carried out in this

3

district. Further, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this District.

**FACTUAL ALLEGATIONS**

15.     LabCorp is a leading provider of medical diagnostic testing services. It performs medical tests that aid in the diagnosis or detection of diseases, and that measure the progress of or recovery from a disease.

16.     LabCorp's invoices cover laboratory testing fees only and are separate from any bill received by a patient's physician. Patients can be charged by either directly going to a LabCorp facility or if their physician has sent their specimen to a LabCorp laboratory.

17.     When certain LabCorp customers do not pay their invoices within the requested time period, LabCorp will reach out to a collection agency like American Medical Collection Agency, Inc. ("AMCA").

18.     Upon information and belief, LabCorp would provide AMCA with LabCorp customers' Sensitive Information, which AMCA subsequently housed in its own system, in order to facilitate collections. This information included first and last name, date of birth, address, phone, date of service, provider, and balance information.

19.     On June 4, 2019, LabCorp publicly announced the following, in relevant part, in a Form 8-K filed with the Securities and Exchange Commission:

> According to AMCA, this activity occurred between August 1, 2018, and March 30, 2019. AMCA is an external collection agency used by LabCorp and other healthcare companies. LabCorp has referred approximately 7.7 million consumers to AMCA whose data was stored in the affected AMCA system. AMCA's affected system included information provided by LabCorp. That information could include first and last name, date of birth,

4

address, phone, date of service, provider, and balance information. AMCA's affected system also included credit card or bank account information that was provided by the consumer to AMCA (for those who sought to pay their balance). LabCorp provided no ordered test, laboratory results, or diagnostic information to AMCA. AMCA has advised LabCorp that Social Security Numbers and insurance identification information are not stored or maintained for LabCorp consumers.

AMCA has informed LabCorp that it is in the process of sending notices to approximately 200,000 LabCorp consumers whose credit card or bank account information may have been accessed. AMCA has not yet provided LabCorp a list of the affected LabCorp consumers or more specific information about them.[1]

20.     LabCorp failed to properly monitor its vendors to ensure that proper data security safeguards were being implemented by those vendors throughout the breach period so as to properly safeguard class members' Sensitive Information.  Had LabCorp properly monitored its vendor's systems, it would have discovered the intrusion much sooner than eight months after the breach began.

21.     Defendants had obligations created by HIPAA, industry standards, common law, and representations made to class members, to keep class members' Sensitive Information confidential and to protect it from unauthorized access and disclosure.

22.     Plaintiff and class members provided their Sensitive Information to LabCorp with the reasonable expectation and mutual understanding that LabCorp and any business partners to

---

[1]http://secfilings.nasdaq.com/filingFrameset.asp?FilingID=13474097&RcvdDate=6/4/2019&Co Name=LABORATORY%20CORP%20OF%20AMERICA%20HOLDINGS&FormType=8-K&View=html (last accessed June 13, 2019).

which LabCorp disclosed the Sensitive Information would comply with their obligations to keep such information confidential and secure from unauthorized access.

23. Indeed, LabCorp promised patients that it will keep their Sensitive Information confidential, stating in its Notice of Privacy Practices that it is "committed to the protection of your PHI and will make reasonable efforts to ensure the confidentiality of your PHI, as required by statute and regulation."[2] LabCorp's Notice of Privacy Practices also acknowledged that LabCorp is subject to HIPAA.[3]

24. LabCorp further stated in its Notice of Privacy Practices that its vendors maintain adequate data security over patient data, stating:

> LabCorp may disclose PHI to its business associates to perform certain business functions or provide certain business services to LabCorp. For example, we may use another company to perform billing services on our behalf. All of our business associates are required to maintain the privacy and confidentiality of your PHI.[4]

25. Defendants' data security obligations were particularly important given the substantial increase in data breaches in the healthcare industry preceding the date of the breach. The increase in data breaches, and attendant risk of future breaches, was widely known to the public and to anyone in Defendants' industries, including Defendants.

---

[2]*See* https://www.labcorp.com/hipaa-privacy/hipaa-notice-privacy-practices# (last accessed June 13, 2019).

[3] *Id.*

[4] *Id.*

**A.    Defendants' Data Security Failures and HIPAA Violations**

26.    Defendants' data security failures demonstrate that they failed to honor its duties and promises by not:

a.    Maintaining an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.    Adequately protecting patients' Sensitive Information;

c.    Properly monitoring its own data security systems for existing intrusions;

d.    Ensuring that its vendors employed reasonable data security procedures;

e.    Ensuring the confidentiality and integrity of electronic protected health information ("PHI") they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

f.    Implementing technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

g.    Implementing policies and procedures to prevent detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

h.    Implementing procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

i.    Protecting against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

j. Protecting against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

k. Ensuring compliance with HIPAA security standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4); and/or

l. Training all members of its workforces effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforces to carry out its functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b).

**B.     Damages to Class Members**

27.     Plaintiff and class members have been damaged by the compromise of their Sensitive Information in the Data Breach.

28.     Plaintiff and class members face substantial risk of out of pocket fraud losses such as loans opened in their names, medical services building their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

29.     Plaintiff and class members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PHI as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and class members.

30.     Plaintiff and class members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

31. Plaintiff and class members suffered a "loss of value" of their Sensitive Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of quote loss of value" damages in data breach cases.

32. Class members who paid LabCorp for its services were also damaged via "benefit of the bargain" damages. Such class members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price class members paid to LabCorp was intended to be used by LabCorp to fund adequate data security and monitor its vendors' compliance with data security obligations. LabCorp did not properly monitor its vendors' compliance with data security obligations. Thus, the class members did not get what they paid for.

33. Plaintiff and class members have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts for misuse.

34. The U.S. Government Accountability Office noted in a report on data breaches (the "GAO Report") that identity thieves often use identifying data such as Social Security numbers to open financial accounts, receive government benefits, and incur charges and credit in a person's name.[5] As the GAO Report states, this type of identity theft is particularly harmful because it often takes time for the victim to become aware of the theft, and the theft can adversely impact the victim for years.

35. In addition, the GAO Report states that victims of identity theft may face "substantial costs and inconveniences repairing damage to their credit records."[6] identity theft victims are frequently required to spend many hours as well as money repairing the impact to their credit.

---

[5] *See* https://www.gao.gov/new.items/d07737.pdf (last accessed June 12, 2019).

[6] *Id.*

36.     There may be a substantial time lag — measured in years — between when sensitive information is stolen and when it is used. According to the GAO Report: "[O]nce stolen data have been sold or posted to the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[7] thus, Plaintiff and class members must vigilantly monitor their financial and medical accounts for many years to come.

37.     With access to the type of information that was accessed in the Data Breach, criminals can use the information gained to gather additional information about Plaintiff and class members, open accounts in victims' names; receive medical service in the victims' name; obtain a driver's license or official identification card in the victim's name but with the thief's photo; use the victim's name and Social Security number to obtain government benefits; file a fraudulent tax return using the victim's information; and give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[8]

38.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number,

---

[7] *Id.*

[8] *See* Federal Trade Commission, Warning Signs of Identity Theft, *available at* https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed June 12, 2019).

[9] 17 C.F.R. § 248.201 (2013).

alien registration number, government passport number, employer or taxpayer identification number."[10]

39.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

40.     The Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later.[11]

41.     Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected. What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security Number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

42.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center: "The credit bureaus and banks are able to link the

---

[10] *Id.*

[11] Social Security Administration, Identity Theft and Your Social Security Number, *available at* http://www.ssa.gov/pubs/EN-05-10064.pdf (last visited June 14, 2019).

new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[12]

43.     Based on the foregoing, the information stolen in the data breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach such as those that occurred at Target and Home Depot. Victims affected by those retailer breaches could avoid much of the potential future harm by cancelling credit or debit cards and obtaining replacements. The information stolen in the data breach is difficult, if not impossible, to change—Social Security number, name, employment information, income data, etc.

44.     This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[13]

45.     The Sensitive Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often sell it on the cyber "black-market" or "dark web" indefinitely. Cyber criminals routinely post stolen Social Security numbers, financial information, medical information, and other sensitive personal information on anonymous websites, making the information widely to a criminal underworld. There is an active and robust market for this information.

---

[12] *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Brian Naylor, Feb. 9, 2015, *available at* http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackershas-millions-worrying-about-identity-theft (last visited June 14, 2019).

[13] *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, Tim Greene, Feb. 6, 2015, *available at* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited June 14, 2019).

46. Medical information is especially valuable to identity thieves. Because of its value, the medical industry has experienced disproportionally higher numbers of data theft events than other industries. Defendants knew or should have known this and strengthened its data systems accordingly. Defendants were put on notice of the substantial and foreseeable risk of harm from a data breach, yet they failed to properly prepare for that risk.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of a Nationwide Class defined as follows:

> All persons in the United States who utilized LabCorp's services and whose Sensitive Information was maintained on AMCA's system that was compromised in the data breach announced by LabCorp on June 3, 2019.

48. Excluded from the above Classes are Defendants' executive officers, and the judge to whom this case is assigned.

49. **Numerosity**. The Classes are each so numerous that joinder of all members is impracticable. The Class consists of hundreds, if not thousands or more individuals, on information and belief.

50. **Commonality**. There are many questions of law and/or fact common to Plaintiff and the class. Common questions include, but are not limited to:

   a. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations including, e.g., HIPAA;

   b. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

13

c. Whether Defendants owed a duty to class members to safeguard their Sensitive Information;

d. Whether Defendants breached its duty to class members to safeguard their Sensitive Information;

e. Whether computer hackers obtained class members' Sensitive Information in the Data Breach;

f. Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

g. Whether Plaintiff and class members suffered legally cognizable damages as a result of Defendants' misconduct; and

h. Whether Plaintiff and class members are entitled to injunctive relief.

51.    **Typicality**. Plaintiff's claims are typical of the claims of class members in that Plaintiff, like all class members, had his personal information compromised in the Data Breach.

52.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable counsel with significant experience in complex class action litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes. Plaintiff's counsel has the financial and personnel resources to do so. Neither Plaintiff nor his counsel have interests that are contrary to, or that conflict with, those of the Classes.

53.    **Predominance**. Defendants have engaged in a common course of conduct toward Plaintiff and class members. The common issues arising from Defendants' conduct affecting class members predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

54. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would Therefore have no effective remedy. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

55. Defendants have acted on grounds that apply generally to the Classes as a whole, so that injunctive relief is appropriate on a class-wide basis under Fed. R. Civ. P. 23(b)(2).

**COUNT I**
**NEGLIGENCE**

56. Plaintiff re-alleges and incorporates by reference all preceding allegations.

57. LabCorp required Plaintiff and class members to submit non-public personal information in order to obtain medical services, which it forwarded to AMCA for billing purposes.

58. By collecting and storing this data, and sharing it and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard class members' Sensitive Information, to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

Case 1:19-cv-00609-NCT-LPA    Document 1    Filed 06/18/19    Page 15 of 27

59.     Defendants owed a duty of care to Plaintiff and class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Sensitive Information.

60.     Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between LabCorp and its client patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to class members from a data breach.

61.     Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

62.     In addition, Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

63.     Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential Sensitive Information.

16

64. Defendants breached its duties, and thus were negligent, by failing to use reasonable measures to protect class members' Sensitive Information, and by failing to provide timely notice of the Data Breach. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard class members' Sensitive Information;

b. Failing to adequately monitor the security of AMCA's networks and systems;

c. Failure by LabCorp to periodically ensure that its vendors, including AMCA, had plans in place to maintain reasonable data security safeguards;

d. Allowing unauthorized access to class members' Sensitive Information;

e. Failing to detect in a timely manner that class members' Sensitive Information had been compromised; and

f. Failing to timely notify class members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

65. It was foreseeable that Defendants' failure to use reasonable measures to protect class members' Sensitive Information would result in injury to class members. Further, the breach of security was reasonably foreseeable given the known high frequency of data breaches in the medical industry.

66. It was therefore foreseeable that the failure to adequately safeguard class members' Sensitive Information would result in one or more types of injuries to class members.

67. Plaintiff and class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

68. Plaintiff and class members are also entitled to injunctive relief requiring Defendants to, e.g.,: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free credit monitoring to all class members.

## COUNT II
## BREACH OF IMPLIED CONTRACT

69. Plaintiff re-alleges and incorporates by reference all preceding allegations.

70. When Plaintiff and class members provided their Sensitive Information to Defendants in exchange for Defendant's services, they entered into implied contracts with Defendants pursuant to which Defendants agreed to reasonably protect such information.

71. Defendants solicited and invited class members to provide their Sensitive Information as part of Defendants' regular business practices. Plaintiff and class members accepted Defendants' offers and provided their Sensitive Information to Defendants.

72. In entering into such implied contracts, Plaintiff and class members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

73. Class members were aware of, or reasonably anticipated that, LabCorp would forward certain Sensitive Information to vendors, as disclosed in LabCorp's Notice of Privacy Practices.

74. Class members who paid money to LabCorp reasonably believed and expected that Defendants would use part of those funds to obtain adequate data security. Defendants failed to do so.

75. Plaintiff and class members would not have entrusted their Sensitive Information to Defendants in the absence of the implied contract between them and Defendants to keep the

18

information reasonably secure. Plaintiff and class members would not have entrusted their Sensitive Information to LabCorp in the absence of LabCorp's implied promise to monitor its vendors to ensure that they adopted reasonable data security measures.

76.     Plaintiff and class members fully and adequately performed their obligations under the implied contracts with Defendants.

77.     Defendants breached its implied contracts class members by failing to safeguard and protect their Sensitive Information. LabCorp breached its implied contract with class members by failing to properly monitor the data security practices of its vendors, AMCA.

78.     As a direct and proximate result of Defendants' breaches of the implied contracts, class members sustained damages as alleged herein.

79.     Plaintiff and class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

80.     Plaintiff and class members are also entitled to injunctive relief requiring Defendants to, e.g.,: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free credit monitoring to all class members.

## COUNT III
## VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

81.     Plaintiff re-alleges and incorporates by reference all preceding allegations.

82.     LabCorp, as a North Carolina based entity, is subject to the laws and regulations of the State of North Carolina, including but not limited to the North Carolina Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("North Carolina UDTPA").  The North Carolina

UDTPA "declare[s] unlawful" all "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." *Id.* § 75-1.1(a).

83.    For purposes of North Carolina UDTPA, the term "'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." *Id.* § 75-1.1(b).

84.    LabCorp violated the North Carolina UDTPA by engaging in unlawful, unfair, or deceptive business acts and practices in or affecting commerce, as well as unfair, deceptive, untrue, or misleading advertising that constitute acts of "unfair competition" prohibited in the North Carolina UDTPA.

85.    LabCorp engaged in unlawful acts and practices with respect to its services by establishing inadequate security practices and procedures described herein; by soliciting and collecting Plaintiff's and class members' Sensitive Information with knowledge that such information would not be adequately protected; and by gathering Plaintiff's and class members' Sensitive Information in an unsecure electronic environment in violation of North Carolina's data breach statute, the Identity Theft Protection Act, N.C. Gen. Stat. § 75-60, *et seq.*, which requires LabCorp to undertake reasonable methods of safeguarding the Sensitive Information of Plaintiff and the class members.

86.    In addition, LabCorp engaged in unlawful acts and practices when it failed to discover and then disclose the data security breach to Plaintiff and the class members in a timely and accurate manner, contrary to the duties imposed by N.C. Gen. Stat. § 75-65.

87.    To date, LabCorp still has not provided sufficient information regarding the data security breach to Plaintiff and the class members.

88.     As a direct and proximate result of LabCorp's unlawful acts and practices, Plaintiff and the class members were injured and lost money or property, including but not limited to the loss of their legally protected interests in the confidentiality and privacy of their Sensitive Information.

89.     LabCorp knew or should have known that its data security practices were inadequate to safeguard Plaintiff and the class members' Sensitive Information, that the risk of a data security breach was significant, and that its system was, in fact, breached.

90.     LabCorp's actions in engaging in the above-named unlawful practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the class members.

91.     Plaintiff and the class members seek relief under the North Carolina UDTPA including, but not limited to: restitution to Plaintiff and class members of money and property that LabCorp has acquired by means of unlawful and unfair business practices; disgorgement of all profits accruing to LabCorp because of its unlawful and unfair business practices; treble damages (pursuant to N.C. Gen. Stat. § 75-16); declaratory relief; attorneys' fees and costs (pursuant to N.C. Gen. Stat. § 75-16.1); and injunctive or other equitable relief.

## COUNT IV
## NEGLIGENCE PER SE

92.     Plaintiff re-alleges and incorporates by reference all preceding allegations.

93.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information.

94.     Pursuant to HIPAA (42 U.S.C. § 1302d, et seq.), Defendants had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Sensitive Information.

95. Pursuant to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Defendants had a duty to protect the security and confidentiality of Plaintiff's and Class Members' Sensitive Information.

96. Defendants breached their duties to Plaintiff and Class Members under the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), and Gramm- Leach-Bliley Act (15 U.S.C. § 6801) by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information.

97. Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

98. But for Defendants' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

99. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of its duties. Defendants knew or should have known that they were failing to meet its duties, and that Defendants' breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Sensitive Information.

100. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT V
## BREACH OF FIDUCIARY DUTY

101. Plaintiff re-alleges and incorporates by reference all preceding allegations.

102. In light of the special relationship between Defendants and Plaintiff and Class Members, whereby Defendants became guardians of Plaintiff's and Class Members' Sensitive Information, Defendants became fiduciaries created by its undertaking and guardianship of the

22

Sensitive Information, to act primarily for the benefit of its patients, including Plaintiff and Class Members, (1) for the safeguarding of Plaintiff and Class Members' Sensitive Information; (2) to timely notify Plaintiff and Class Members' of a data breach and disclosure; and (3) maintain complete and accurate records of what and where Defendants' patient information was and is stored.

103.    Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their patients' relationship, in particular, to keep secure the Sensitive Information of the patients.

104.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to diligently investigate the Data Breach to determine the number of Class Members affected in a reasonable and practicable period of time.

105.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Sensitive Information.

106.    Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

107.    Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information Defendant created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1).

108.    Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information systems that

23

maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1).

109. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1).

110. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii).

111. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2).

112. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3).

113. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(94).

114. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, et seq.

115. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to effectively train all members of LabCorp's workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of the workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5).

116. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. § 164.530(c).

117. Defendants breached their fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Sensitive Information.

118. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Sensitive Information is used; (iii) the compromise, publication, and/or theft of their Sensitive Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Sensitive Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect

Patient Sensitive Information in their continued possession; (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (viii) the diminished value of Defendants' services they received.

119.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses

## RELIEF REQUESTED

120.     Plaintiff, on behalf of all others similarly situated, requests that the Court enter judgment against Defendants including the following:

a.  Determining that this matter may proceed as a class action and certifying the classes asserted herein;

b.  Appointing Plaintiff as representative of each of the classes and Plaintiff's counsel as class counsel;

c.  An award to Plaintiff and the Class of compensatory and consequential damages;

d.  Injunctive relief requiring Defendants to, e.g.,: (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free credit monitoring to all class members;

e.  An award of attorneys' fees, costs, and expenses, as provided by law or equity;

f.  An award of pre-judgment and post-judgment interest, as provided by law or equity; and

g.  Such other or further relief as the Court may allow.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated:  June 18, 2019                          Respectfully submitted,

*/s/ Carlos E. Mahoney*
Carlos E. Mahoney, NC Bar No. 26509
**GLENN, MILLS, FISHER & MAHONEY, P.A.**
P.O. Drawer 3865
Durham, NC 27702-3865
(919) 683-2135
cmahoney@gmfm-law.com
Local Counsel for Plaintiff

*/s/ Narendra K. Ghosh*
Narendra K. Ghosh, NC Bar No. 37649
**PATTERSON HARKAVY LLP**
100 Europa Dr., Suite 420
Chapel Hill, NC 27517
(919) 942-5200
nghosh@pathlaw.com
Local Counsel for Plaintiff

JOE P. LENISKI, JR. (TN BPR#22891)*
J. GERARD STRANCH, IV (TN BPR# 23045)*
**BRANSTETTER STRANCH &
  JENNINGS, PLLC**
The Freedom Center
223 Rosa L. Parks Ave., Suite 200
Nashville, Tennessee 37203
(615) 254-8801
joeyl@bsjfirm.com
gerards@bsjfirm.com
Counsel for Plaintiff
* Will enter a Special Appearance pursuant to
LR 83.1(d) after registering as a CM/ECF filing user
under LR 8.3(c) and ECF Manual I.(2)

27